## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| JACOB "JD" JOHNSON and RACHEL JOHNSON, <br><br> Plaintiffs, <br><br> v. <br><br> UNIFIED SCHOOL DISTRICT NO. 507, HASKELL COUNTY, KANSAS and MICHAEL WARD, <br><br> Defendants. | Case No. 6:20-cv-1162 |

## **COMPLAINT**

Plaintiffs Jacob "JD" Johnson and Rachel Johnson, through counsel Donald Peterson and Sean McGivern of Graybill & Hazlewood, LLC, alleges as follows for their cause of action against Defendants Unified School District No. 507, Haskell County, Kansas, and Michael Ward:

1. The Court has subject matter jurisdiction over this matter because the claims in this lawsuit are brought under federal law. Plaintiffs' state law claims may be heard in this Court by virtue of 28 U.S.C. § 1367.

2. Venue is proper in this Court because the acts and omissions complained of occurred in this Judicial District.

1

3. Plaintiffs Jacob "JD" and Rachel Johnson, husband and wife, are former employees of Defendant Unified School District No. 507, Haskell County, Kansas ("USD No. 507" and "the District").

4. At all times relevant to the allegations in this Complaint, USD No. 507 received federal financial assistance and was required to comply with Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681 et seq.

5. At all times relevant to the allegations in this Complaint, Defendant Michael Ward was the Superintendent of Defendant USD No. 507.

6. Mike Ward is sued in both his individual and official capacities.

7. USD No. 507 hired JD Johnson in 2015 to work as the principal of the Satanta Junior / Senior High School.

8. USD No. 507 hired Rachel Johnson in 2017 to work as a social studies teacher at the Satanta Junior / Senior High School.

9. JD and Rachel Johnson worked under contracts with the District.

10. Rachel Johnson had a contract for the 2018-2019 school year.

11. JD Johnson had a contract for the 2018-2019 and 2019-2020 school years.

12. On November 10, 2017, Superintendent Ward gave a positive evaluation to Rachel Johnson.

13. A true and accurate copy of Rachel Johnson's November 10, 2017 performance evaluation is attached as Exhibit A.

14. On January 25, 2018, Superintendent Ward gave a positive evaluation to JD Johnson.

15. A true and accurate copy of JD Johnson's January 25, 2018 performance evaluation is attached as Exhibit B.

16. On February 27, 2018, Superintendent Ward wrote a positive reference letter for JD Johnson.

17. A true and accurate copy of the February 27, 2018 reference letter is attached as Exhibit C.

18. During the 2018-2019 school year, USD No. 507 assigned JD Johnson to be the principal of the Satanta Elementary School.

19. G.J. is the minor daughter of JD and Rachel Johnson.

20. During the 2018-2019 school year, G.J. was a student at the Satanta Junior / Senior High School.

21. On October 16, 2018, three male students at Satanta Junior / Senior High School sexually assaulted G.J.

22. G.J. reported the assault to a teacher, who took G.J. to the school counselor, who in turn took G.J. to the School Resource Officer ("SRO").

23. The SRO obtained surveillance video capturing the assault and notified law enforcement, who arrested the boys and processed them for sexual assault charges.

24. USD No. 507 was indifferent to G.J., yet supportive of the three boys. The boys were allowed to participate in sports, while students and faculty displayed animosity towards J.D Johnson, Rachel Johnson, and G.J.

25.  On October 18, 2018, Principal Stegman at the Satanta Junior / Senior High School told G.J. that she was a burden on the District and that she needed to put herself in the shoes of the three young men who assaulted her.

26.  On the afternoon of October 22, 2018, Superintendent Mike Ward summoned J.D. and Rachel Johnson for a meeting the following morning at 7:30 AM.

27.  At the October 23, 2018 meeting, Superintendent Ward told J.D. that "he knew exactly what they were trying to do" and that "these rednecks are a lot smarter than you think." Mr. Ward said he knew the difference between "juvenile grabass" and being assaulted, and what happened to G.J. was the former, not the latter. Superintendent Ward told J.D. and Rachel that they were not fooling anyone, and that they had created such a toxic environment that they had to be put on an indefinite paid leave.

28.  Superintendent Ward told the Johnsons that they would be arrested and terminated if they were seen on school grounds or if they spoke with any student, parent, faculty, board member, or anyone associated with the school except for him.

29.  Superintendent Ward falsely accused JD and Rachel Johnson of "abusing their authority" to initiate criminal proceedings against the three young men who sexually assaulted G.J.

30.  At the end of that meeting, Superintendent Ward told the Johnsons that they had ten minutes to gather their belongings and to leave the premises.

31.  When the meeting ended around 7:40 AM, the Johnsons had to gather their things, quickly, and leave in the presence of many students and parents.

32. After banning J.D. and Rachel from USD No. 507 property, Superintendent Ward solicited written statements from virtually anyone who would provide one, with derogatory and information about the Johnsons dating back years. The alleged transgressions contradict contemporaneous evaluations of the Johnsons.

33. Shortly after being suspended, the Johnsons received a call from their landlord, who was following up on rumors she received that the Johnsons were leaving town.

34. Superintendent Ward spread false rumors about Jacob Johnson having an affair with an educator in a different school district.

35. Superintendent Ward spread false rumors about Rachel Johnson having an affair with the local sheriff.

36. On February 11, 2019, at the behest of Superintendent Ward, the Board of USD No. 507 passed resolutions to terminate both J.D. and Rachel Johnson.

37. Superintendent Ward participated in the executive discussions leading to the public vote on these resolutions.

38. The resolutions to terminate the Johnsons were signed by Sandra Rubio, the mother of one of the three young men who sexually assaulted G.J.

39. The Johnsons were unable to have a meaningful due process hearing on their termination because they were prohibited, on pain of arrest, from speaking with witnesses and being on USD No. 507 property.

40. By 2018, the law was clearly established that government actors cannot restrain free speech on threat of arrest.

41. By 2018, the law was clearly established that government actors cannot retaliate against immediate family members of those who exercise rights protected by the First Amendment to the U.S. Constitution.

42. By 2018, the law was clearly established that government officials cannot broadcast false & defamatory information about employees, in connection with their terminations, for the purpose of harming their reputation and careers.

43. By 2018, the law was clearly established that, if a government employer agreed to follow a specific avenue to resolve the status of an employee's employment, active interference in that process violates the employee's right to procedural due process.

44. Defendants, USD No. 507 and Superintendent Ward violated the Johnsons' rights under the First Amendment to the United States Constitution, including the rights to free speech, the petition, and association.

45. Defendants USD No. 507 and Superintendent Ward violated the Johnsons' rights under the Fourteenth Amendment to the United States Constitution, including the rights to due process of law

46. Defendant USD No. 507 violated the Johnsons' rights under Title IX of the Educational Amendments Act of 1972 and the Johnsons' respective employment contracts.

47. The unlawful conduct of Defendants USD No. 507 and Superintendent Ward has caused substantial harm to the Johnsons, both personally and professionally.

48. The Defendants' actions towards the Johnsons were outrageous, done with malice, and with the intent to harm the Johnsons.

Wherefore, Plaintiffs Jacob "JD" Johnson and Rachel Johnson, pray that the Court enter judgment in their favor, and against Defendants Unified School District No. 507, Haskell County, Kansas, and Michael Ward, for damages in excess of $75,000.00, including compensatory damages, economic damages, noneconomic damages, and punitive damages, as well as costs, interest, and attorneys fees, and other relief that the Court deems just and equitable.

**Plaintiffs Jacob "JD" Johnson & Rachel Johnson demand trial by jury.**

**Plaintiffs Jacob "JD" Johnson & Rachel Johnson designate Wichita, Kansas as the place of trial.**

Dated:  June 19, 2020.

SUBMITTED BY:

GRAYBILL & HAZLEWOOD, LLC

/s/ Donald Peterson
Donald N. Peterson, II, #13805
Sean M. McGivern, #22932
218 N. Mosley St.
Wichita, KS 67202
Telephone: (316) 266-4058
Fax: (316) 462-5566
don@graybillhazlewood.com
sean@graybillhazlewood.com
*ATTORNEYS FOR PLAINTIFF*